IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CONNIE T.,[1]                              6:19-cv-00217-BR

       Plaintiff,              OPINION AND ORDER

v.

Commissioner, Social
Security Administration,

       Defendant.

**KATHERINE EITENMILLER**
**BRENT WELLS**
Harder Wells Baron & Manning
474 Willamette Street
Eugene, OR 97401
(541) 686-1969

      Attorneys for Plaintiff

---

[1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case.

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**RYAN TA LU**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2034

          Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Connie T. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

Plaintiff filed an application for DIB on July 10, 2015, alleging a disability onset date of January 14, 2014.  Tr. 216-

19.[1]  The application was denied initially and on
reconsideration.  An Administrative Law Judge (ALJ) held a
hearing on November 2, 2017.  Tr. 32-67.  Plaintiff was
represented at the hearing.  Plaintiff and a vocational expert
(VE) testified.

The ALJ issued a decision on March 6, 2018, in which she
found Plaintiff was not disabled before her December 31, 2014,
date last insured and, therefore, is not entitled to benefits.
Tr. 10-31.  Pursuant to 20 C.F.R. § 404.984(d), that decision
became the final decision of the Commissioner on December 14,
2018, when the Appeals Council denied Plaintiff's request for
review.  Tr. 1-6.  *See Sims v. Apfel*, 530 U.S. 103, 106-07
(2000).

## BACKGROUND

Plaintiff was born on January 26, 1969, and was 56 years old
at the time of the hearing.  Tr. 216.  Plaintiff has a high-
school education.  Tr. 237.  Plaintiff has past relevant work
experience as a department manager and assistant retail manager.
Tr. 58.

Plaintiff alleges disability during the relevant period due
to bipolar disorder, depression, lower-back pain, anxiety,

---

[1] Citations to the official transcript of record filed by
the Commissioner on November 15, 2017, are referred to as "Tr."

"trouble concentrating," and "trouble interacting with people."
Tr. 128-29.

Except when noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 23-25.


## STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th
Cir. 2012).  To meet this burden, a claimant must demonstrate her
inability "to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which . . . has lasted or can be expected to last for
a continuous period of not less than 12 months."  42 U.S.C.
§ 423(d)(1)(A).  The ALJ must develop the record when there is
ambiguous evidence or when the record is inadequate to allow for
proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d
881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d
453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.  42
U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*,

682 F.3d 1157, 1161 (9ᵗʰ Cir. 2012).  Substantial evidence is
"relevant evidence that a reasonable mind might accept as
adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11
(quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690
(9ᵗʰ Cir. 2009)).  "It is more than a mere scintilla [of
evidence] but less than a preponderance."  *Id.* (citing *Valentine*,
574 F.3d at 690).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9ᵗʰ Cir.
2009).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.  *Ryan v.
Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9ᵗʰ Cir. 2008).  Even
when the evidence is susceptible to more than one rational
interpretation, the court must uphold the Commissioner's findings
if they are supported by inferences reasonably drawn from the
record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9ᵗʰ Cir. 2012).
The court may not substitute its judgment for that of the
Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9ᵗʰ Cir.
2006).


**DISABILITY ANALYSIS**

**I.   The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential

inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a

regular and continuing basis despite her limitations.  20 C.F.R.
§ 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A
'regular and continuing basis' means 8 hours a day, for 5 days a
week, or an equivalent schedule."  SSR 96-8p, at *1.  In other
words, the Social Security Act does not require complete
incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*,
659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885
F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work she has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).
*See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine
whether the claimant is able to do any other work that exists in
the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also
Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can perform.  *Lockwood v.
Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).
The Commissioner may satisfy this burden through the testimony of
a VE or by reference to the Medical-Vocational Guidelines set
forth in the regulations at 20 C.F.R. part 404, subpart P,
appendix 2.  If the Commissioner meets this burden, the claimant
is not disabled.  20 C.F.R. § 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff did not engage in substantial gainful activity from her January 14, 2014, alleged onset date through her December 31, 2014, date last insured. Tr. 16.

At Step Two the ALJ found Plaintiff had the severe impairment of lumbar disc disease.[2] Tr. 16.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments during the relevant period did not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 20. The ALJ found during the relevant period that Plaintiff had the RFC to perform light work with the following limitations: Plaintiff could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs and could never climb ladders, ropes, or scaffolds or be exposed to "hazards such as machinery and unprotected heights." Tr. 20.

At Step Four the ALJ found Plaintiff could perform her past relevant work as an assistant retail manager during the relevant

---

[2] In the heading of the ALJ's opinion relating to her Step Two analysis, the ALJ states Plaintiff's depression was severe during the relevant period. In the ALJ's conclusion of her Step Two analysis, however, the ALJ concludes Plaintiff's depression was nonsevere during the relevant period. The substance of the ALJ's analysis at Step Two makes clear that the heading is a scrivener's error and that the ALJ, in fact, concluded Plaintiff's depression was nonsevere during the relevant period.

period.  Tr. 25.

In the alternative, the ALJ found at Step Five Plaintiff could perform other work that existed in the national economy during the relevant period.  Tr. 26.  Accordingly, the ALJ concluded Plaintiff was not disabled from January 14, 2014, through December 31, 2014.


**DISCUSSION**

Plaintiff contends the ALJ erred when she (1) found at Step Two that Plaintiff's depression was nonsevere during the relevant period; (2) partially rejected Plaintiff's testimony; (3) gave only "some weight" to the Third-Party Function Report of Matt H., Plaintiff's son; and (4) partially rejected the opinions of Laura Rung, M.D., treating physician.

**I.  The ALJ did not err at Step Two when she found Plaintiff's depression was nonsevere during the relevant period.**

As noted, Plaintiff contends the ALJ erred at Step Two when she found Plaintiff's depression was nonsevere during the relevant period.

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.  A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities."  20 C.F.R.

§ 404.1521(a).  *See also Ukolov v. Barnhart*, 420 F.3d 1000, 1003 (9th Cir. 2005).  The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(a), (b).  Plaintiff has the burden at Step Two to establish the existence of a severe impairment and to show any error is harmful.

Courts have held Step Two is "merely a threshold determination meant to screen out weak claims." *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987).  *See also Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017)(same).  Step Two "is not meant to identify the impairments that should be taken into account when determining the RFC.  In fact, '[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe.'" *Buck*, 869 F.3d at 1048-49 (quoting SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)).

The ALJ concluded Plaintiff's depression was a medically determinable impairment, but she concluded it did not cause more than "mild" limitations in Plaintiff's ability to understand, to remember, or to apply information; to interact with others; to concentrate, to persist, or to maintain pace; or to adapt or to manage herself during the relevant period.  The ALJ noted Plaintiff was able to take care of her personal needs, to care for her minor foster child, to travel alone, to drive a car, and

to do minor household chores during the relevant period. The ALJ
stated although Plaintiff was unable to tend to her horses,
sheep, and goats during the relevant period, it was due to her
physical limitations rather than her mental limitations. The ALJ
also noted the record reflected Plaintiff took her granddaughter
to a pumpkin patch, went shopping on Black Friday for several
hours, and took her daughter swimming at the local swimming pool
during the relevant period. Plaintiff testified at the hearing
that she was unable to go to state fairs or to her daughter's
sporting events due to her physical limitations rather than her
mental-health issues. Finally, the ALJ noted the record reflects
Plaintiff's mental-health issues improved during the relevant
period due to medication and therapy.

In addition, the Ninth Circuit has held when the ALJ has
resolved Step Two in a claimant's favor, any error in designating
specific impairments as severe at Step Two does not prejudice a
claimant if the ALJ considered the impairments when assessing
Plaintiff's RFC. *See, e.g., Vivian v. Saul*, 780 F. App'x 526,
527 (9th Cir. 2019)("Any error at step two in failing to list
Vivian's hand, knee, and hip impairments and spinal
osteoarthritis was harmless because the ALJ resolved step two in
Vivian's favor and considered all of his symptoms in formulating
the residual function capacity."); *Buck,* 869 F.3d at 1049
("[S]tep two was decided in [the plaintiff's] favor after both

hearings.  He could not possibly have been prejudiced.  Any alleged error is therefore harmless and cannot be the basis for a remand.")(citation omitted).  Here the ALJ resolved Step Two in Plaintiff's favor and considered Plaintiff's mild mental-health limitations in her assessment of Plaintiff's RFC.

Accordingly, on this record the Court concludes the ALJ did not err when she found at Step Two that Plaintiff's depression was nonsevere during the relevant period.  In the alternative the Court concludes because the ALJ resolved Step Two in Plaintiff's favor, any error by the ALJ in failing to identify Plaintiff's depression as severe is harmless.

## II.  **The ALJ did not err when she partially rejected Plaintiff's testimony.**

As noted, Plaintiff contends the ALJ erred when she partially rejected Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not

any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id*. The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

Plaintiff testified at the hearing that during the relevant period she would experience "flare" ups of lower-back pain and would be unable to bend over, to tie her shoes, or to move. Plaintiff described the pain during a flare as "like needles shoving you if you go to move." Tr. 49. Plaintiff explained when she was not having "a flare," she could dress herself, put on shoes, "move around the house," sit, and stand without problems. Tr. 49. Plaintiff noted her doctors had given her different exercises to avoid having "flares," "some kind of medication for a muscle relaxant during a flare," and Trazadone. Tr. 48. During the relevant period Plaintiff's flares would "last a week, sometimes ten days." Tr. 49. The frequency of Plaintiff's flares "would depend . . . on [her] activity." Tr. 50. For example, if Plaintiff had to stand in one place for more than ten minutes or do "any kind of lifting," it would bring on a flare. Tr. 50. Plaintiff testified she was unable to go to

the state fair or to her daughter's athletic activities because she could not stand in line without having a flare.  During the relevant period Plaintiff "usually [had] one [flare] at least every three months."  Tr. 51.

Plaintiff noted she began going to Linn County Mental Health just before the relevant period because she was "extremely depressed," she could not "get along with anybody," and "life was miserable."  Tr. 51.  Plaintiff was put on antidepressants and a mood stablilizer and began counseling, "which helped tremendously."  Tr. 51.

During the relevant period Plaintiff lived with her husband and foster daughter in a house on five acres.  Plaintiff's brother-in-law and her son and daughter-in-law also lived on the property.  Plaintiff's children train horses and have horses, sheep, and goats on the property.  During the relevant period Plaintiff's children took care of the animals because Plaintiff's back issues prevented her from caring for the animals.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's testimony "concerning the intensity, persistence and limiting effects of [her] symptoms [is] not entirely consistent with the medical evidence and other evidence in the record."  Tr. 21.  Specifically, the ALJ noted on April 12, 2014, Plaintiff was seen by Hank Holmes, M.D., for back

pain that "has been aggravated for the last 7 days."  Tr. 335.
Dr. Holmes noted Plaintiff appeared to be "very uncomfortable,"
but she had a negative straight-leg raise.  Dr. Holmes
administered a Medrol injection, which decreased Plaintiff's pain
by eighty percent, and "she was able to stand pain-free for the
first time in [a] long time."  Tr. 336.

On April 12, 2014, Plaintiff had an x-ray of her lumbar
spine that showed only "mild to moderate disc space narrowing
[at] L5-S1."  Tr. 338.

On October 27, 2014, Dr. Rung, treating physician, discussed
the "very mild findings on x-ray of L5-S1" with Plaintiff.
Tr. 402.  Dr. Rung noted her "clinical findings [are] consistent
with the L5-S1 disc as [Plaintiff's] pain generator" and that
Plaintiff understood "this is not treatable by surgery and . . .
it is a common finding [that is] not necessarily pathological for
many people."  Tr. 402.  Plaintiff reported when she suffers a
flare she has "severe pain immediately on standing up[, which]
continues for about 3 hours until gradual diminution."  Tr. 399.
Dr. Rung recommended Plaintiff should put heat on her lower back,
take ibuprofen, avoid bending for the first two hours, and "walk
around gently" when she suffered an "acute flare[]."  Tr. 402.
Dr. Rung also prescribed gabapentin to treat pain during flares
and recommended a home-exercise program "to increase
[Plaintiff's] endurance for standing and walking" although she

noted this was "not likely [to] eliminate the severe flares." Tr. 402. On January 15, 2015, Plaintiff reported to Dr. Rung that she had suffered only one flare since her October 2014 visit. The flare was "as severe as usual," but gentle walking "was very helpful" in relieving the pain. Tr. 404.

The ALJ also noted Plaintiff was able to care for her 13-year old foster daughter, to do household chores, to shop, to drive, to feed her goats, and to assist with caring for other animals during the relevant period. On October 31, 2014, Plaintiff reported to Nickie Frisch Taylor, MSW, LCSW, that she felt "overwhelmed by taking care of her children's horses. She is feeling taken advantage of and [that] she [is] failing to do a good job." Tr. 465.

The ALJ noted Plaintiff's mental-health issues improved when Plaintiff regularly took medications and attended therapy. In January 2014 Plaintiff was prescribed Lithium to treat her symptoms of depression. On July 11, 2014, Plaintiff reported to Ben Newman, RN, MN, PMHNP, that she had stopped taking Lithium because it made her feel sleepy. Plaintiff continued to take Paxil for depression, and Newman discussed with Plaintiff "the fact that Paxil will probably make her mood swings worse if she is not taking a mood stabilizer at the same time." Tr. 350. Newman prescribed Lamotrigine as a mood stabilizer. On August 5, 2014, Plaintiff reported Lamotrigine was "starting to be helpful

with her moods." Tr. 375. On August 29, 2014, Plaintiff reported her mood swings were "greatly improved," but she was feeling depressed. Newman switched Plaintiff from Paxil to Cymbalta. On September 4, 2014, Plaintiff reported feeling "much better" and "more normal." Tr. 457. On October 7, 2014, Newman noted Cymbalta "seems to be helping with [Plaintiff's] mood, [and] . . . she is not getting as depressed as she used to." Tr. 379. Plaintiff reported "occasionally using a Lorazepam prescription that she has had in the past," and Newman "cautioned her against using that." Tr. 379. Overall Newman reported Plaintiff's depression was "somewhat alleviated and [her] mood swings are not getting as low as they have." Tr. 379. By January 2015 Plaintiff reported "doing overall a lot better since she first [went for mental-health treatment] one year ago. She believes her meds are helping her." Tr. 366.

The Court concludes on this record that the ALJ did not err when she partially rejected Plaintiff's testimony about the intensity, persistence, and limiting effects of her symptoms because the ALJ supported her opinion with substantial evidence in the record.

**III. The ALJ did not err when she gave only some weight to the Third-Party Function Report of Matt H., Plaintiff's son**

Plaintiff alleges the ALJ erred when he gave some weight to the Third-Party Function Report of Matt H., Plaintiff's son.

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members."). The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).

On August 14, 2015, Matt H. completed a Third-Party Function Report in which he stated Plaintiff suffers symptoms and limitations similar to those set out by Plaintiff in her testimony. Specifically, he stated Plaintiff experiences flares in back pain that make it so she is "unable to do nearly everything" when she "stands, sits, or moves for any length of time." Tr. 244. Matt H. also noted Plaintiff has "mental instability" that causes her to "get[] angry very easily[, . . .] go[] off on people for the smallest things," and struggle to handle change. Tr. 244. Matt H. noted Plaintiff feeds the family dog; sometimes helps to look after the family's goats and sheep, "but nothing too strenuous"; mows the lawn with the riding lawn mower; occasionally grocery shops; watches television daily;

and can drive a car.  Tr. 247-48.  Matt H. also noted Plaintiff
is often depressed during winter time; will pick fights with
family members; has gone on "manic shopping sprees"; does not get
along with anyone; cannot keep friends; cannot take instructions
or orders from anyone; cannot stay on topic for an entire
conversation; and "is unable to logically think thru [*sic*] a
stressful situation[, she] freaks out and yells at people."
Tr. 249-50.

The ALJ gave "some weight" to Matt H.'s statements on the
grounds that they were not supported by medical evidence in the
record and are based, in part, on Plaintiff's self-reported
symptoms, which the Court has already concluded the ALJ properly
rejected.  Germane reasons for discrediting lay-witness testimony
include inconsistency with the medical evidence and the fact that
the testimony "generally repeat[s]" the properly discredited
testimony of a claimant.  *Bayliss v. Barnhart*, 427 F.3d 1211,
1218 (9th Cir. 2005).  *See also Williams v. Astrue*, 493 F. App'x
866 (9th Cir. 2012); *Molina*, 674 F.3d at 1117 (When a lay witness
does not describe limitations beyond those described by Plaintiff
and the ALJ properly rejected the Plaintiff's subjective symptom
testimony, any error in rejecting the lay-witness testimony would
be harmless.).

The Court concludes on this record that the ALJ did not err
when she partially rejected Matt H.'s Third-Party Function Report

because the ALJ gave reasons germane to Matt H. supported by substantial evidence in the record.

## II.  The ALJ did not err when she gave "limited weight" to the opinions of Dr. Rung.

Plaintiff asserts the ALJ erred when she gave limited weight to the January 2015 and September 2017 opinions of Dr. Rung, treating physician.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002).  When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

On January 15, 2015, Dr. Rung completed a note in which she stated Plaintiff is under her care for lower-back pain and "L5-S1 disc degeneration."  Tr. 356.  Dr. Rung noted Plaintiff "has had more than 10 years of severe episodes of low back pain, plus ongoing chronic low back pain between episodes."  Tr. 356.  Dr. Rung explained:  "During her flares of pain [Plaintiff] is totally disabled, usually for 3-6 days.  These have happened about every 2 months in the past while unemployed.  These are

likely to occur more frequently if working."  Tr. 356.

On September 21, 2017, Dr. Rung completed a Medical Evaluation Form in which she noted she has been Plaintiff's treating physician since October 27, 2014.  Dr. Rung stated Plaintiff suffers from chronic lower-back pain due to an L5-S1 disc degeneration, which results in lower-back pain and stiffness daily as well as "flares of acute, incapacitating low back pain." Tr. 523.  Dr. Rung noted when Plaintiff is suffering a flare, she must alternate lying down and walking.  Dr. Rung stated Plaintiff can walk two or three city blocks without pain, can stand and/or walk for ten minutes at a time, can sit for an hour at a time, can occasionally lift up to 20 pounds, and can never lift 50 pounds.  Dr Rung noted during a flare Plaintiff can sit for one hour in an eight-hour work day and stand or walk for one hour in an eight-hour work day.  When Plaintiff is not experiencing a flare, she can sit for seven hours in an eight-hour work day and stand or walk for one hour in an eight-hour work day.  As to whether Plaintiff "need [*sic*] to take any unscheduled breaks during an 8-hour workday," Dr. Rung stated it "varies dramatically from day to day.  During flares she is not able to go to work."  Tr. 525.  Dr. Rung, however, noted Plaintiff would miss three or four days of work per month. Tr. 526.

The ALJ gave limited weight to Dr. Rung's opinions on the

grounds that they are unsupported by her treatment notes during the relevant period, she had seen Plaintiff only twice at the time of her first opinion, and she saw Plaintiff only once during the relevant period. Specifically, the only time Plaintiff saw Dr. Rung before her date last insured, Plaintiff reported she was experiencing pain at a level of one out of ten (ten being the highest level of pain). Plaintiff had normal paraspinal muscle tone, normal lumbar strength, a normal lower-extremity examination, normal sensation, normal reflexes, and a normal gait and station. Tr. 401-02. Dr. Rung discussed with Plaintiff her "very mild findings on x-ray of L5-S1 disc degeneration" and noted "it is a very common finding not necessarily pathological for many people." Tr. 402. An ALJ may reject a treating physician's opinion if it is inconsistent with her treatment notes. *Weetman v. Sullivan*, 877 F.2d 20, 22-23 (9th Cir. 1989). In addition, the nature and extent of the treatment relationship is an acceptable factor for the ALJ to consider when assessing the credibility of a medical opinion. *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017)(citing 20 C.F.R. § 404.1527(c)).

On this record the Court concludes the ALJ did not err when he gave limited weight to Dr. Rung's opinions because the ALJ provided clear and convincing reasons for doing so based on substantial evidence in the record.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 5th day of March, 2020.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge